**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| 1. BENJAMIN M. BAILEY, an individual, | ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) Case No. 18-CV-142-TCK-JFJ ) |
| 1. ARDAGH GLASS, INC., a foreign for-profit business corporation, | ) ) ) |
| Defendant. | ) **JURY TRIAL DEMANDED** ) **ATTORNEY LIEN CLAIMED FOR** ) **THE FIRM** |

**COMPLAINT**

**COMES NOW,** the Plaintiff, Benjamin M. Bailey ("Plaintiff"), through his attorney of record, Charles C. Vaught of Armstrong & Vaught, P.L.C. and brings this action pursuant to Title VII of the Civil Rights Act of 1964, as amended, for racial discrimination and retaliation and pursuant to the ADAAA, as amended, for disability discrimination and retaliation and pursuant to the ADEA, as amended, for age discrimination committed by the defendant, Ardagh Glass, Inc. ("Defendant").

**JURISDICTION AND VENUE**

1. Jurisdiction is invoked pursuant to 28 U.S.C. §§ 1331 and 1367(a). In particular, jurisdiction is premised on violations of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, *et seq.*, the Age Discrimination in Employment Act, 29 U.S.C. §§ 621, *et seq.*, and the Americans with Disabilities Act, as amended, 42 U.S.C. §§ 12101, *et seq*.

2. Declaratory and equitable relief are sought pursuant to 28 U.S.C. § 2201 and 28 U.S.C. § 2202, and compensatory and punitive damages are sought pursuant to 42 U.S.C. § 2000e, *et seq.*

3. Costs and attorneys' fees may be awarded pursuant to Rule 54 of the Federal Rules of Civil Procedure and the above statutes.

4. This Court has jurisdiction over the parties and the subject matter of this action, and this action properly lies in the Northern District of Oklahoma, pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1391(b), because the unlawful employment practices alleged herein arose in this judicial district.

5. Plaintiff is, and was at all times relevant hereto, a resident of the State of Oklahoma, residing in Tulsa, Oklahoma.

6. The acts and/or omissions giving rise to this lawsuit occurred in Sapulpa, Creek County, State of Oklahoma.

7. In conformance with Title VII statutory prerequisites, Plaintiff submitted pre-charge information to the United States Equal Employment Opportunity Commission ("EEOC"). Subsequently, Plaintiff submitted a Charge of Discrimination to the EEOC. The EEOC completed its investigation and issued a Notice of Right to Sue on December 20, 2017 (attached as Exhibit A hereto and hereby incorporated by reference as though fully set forth herein), which was not received by Plaintiff until December 26, 2017. Subsequently, Plaintiff submitted a new Charge of Discrimination to the EEOC regarding the retaliatory termination of his employment by Defendant. The EEOC completed its investigation and issued a Notice of Right to Sue for these new matters on January 17, 2018 (attached as Exhibit B hereto and hereby incorporated by reference as though full set forth herein), which was received by Plaintiff on January 17, 2018.

8. Defendant is an employer as defined by Title VII of the Civil Rights Act, at 42 U.S.C. § 2000e(b), in that it is a private employer engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year.

9. Defendant is an employer as defined by the ADAAA, at 42 U.S.C. § 12111(5)(A), in that it is a person engaged in an industry affecting commerce who has 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year.

10. Defendant is an employer as defined by the ADEA, at 29 U.S.C. § 630(b), in that it is a person engaged in an industry affecting commerce who has twenty or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year.

11. Plaintiff was at all times relevant hereto an employee as defined by 42 U.S.C. § 2000e(f), 29 U.S.C. § 630(f), and 42 U.S.C. § 12111(4), in that he was employed by an employer.

## OPERATIVE FACTS

12. Plaintiff is a member of certain protected classes, to wit: African American, disabled, an employee over the age of 40, and an individual who has reported discrimination to his employer.

13. Plaintiff suffers from disabilities as a result of his diabetes. The diabetes has affected Plaintiff's ability to see and he has undergone multiple surgeries to his eyes to repair the effects of diabetic retinopathy. However, Plaintiff's vision remains impaired. Additionally, Plaintiff's diabetes also causes him to suffer from episodes where his blood sugar is low. When this occurs, Plaintiff can exhibit signs of confusion, exhaustion, lethargy, and has difficulty in moving, thinking and processing events.

14. Plaintiff was hired by a predecessor to Defendant on May 14, 1992 and was initially assigned to a utility position. As Plaintiff's employment progressed, he was promoted to Electro-Mechanic, the position he served in through the remainder of his employment with Defendant.

15. During Plaintiff's employment, he was subjected to discriminatory comments related to his race by his co-workers. Relevant, recent examples of the discrimination Plaintiff was subjected to includes the following:

    a. On February 7, 2017, Chris Lierly contacted their immediate supervisor, Mike Cassette, and asked if he had any relief for the Box Shop. Plaintiff then responded over the radio that he was here and thought that they had already had this issue resolved. Mr. Lierly then responded with "I don't care about any of that, all I know is that you need to get your ass up here, Boy!" When Plaintiff approached Mr. Lierly to discuss his use of the epithet "boy" towards Plaintiff and that Plaintiff was going to report the comment to Human Resources, Mr. Lierly became enraged and picked up a length of metal rebar and threatened to kill Plaintiff. Plaintiff did nothing to cause such a reaction from Mr. Lierly and, in fact, it took two employees, Randy Creason and William Long, to prevent Mr. Lierly from striking Plaintiff with the rebar.

    b. Plaintiff met with Human Resources regarding this incident on or about February 10, 2017 and reported it to Katie Brown. Plaintiff had union representation, Terry Clark, present for this meeting. During this meeting, Plaintiff did advise Ms. Brown that Mr. Lierly's use of the word "boy" in this context was discriminatory. Mr. Clark also advised Ms. Brown of the same and, more particularly, stated "My God, Katie, you cannot, nor should you, ever go around calling another man, let alone a black man, 'boy.' It is as bad as calling him the 'N' word. You just can't do it." Ms. Brown responded, "Well, call me a millennial, I guess I am new to this. I never knew that." However, Ms. Brown did agree to investigate Plaintiff's complaint.

 c. Approximately one month later, on March 7, 2017, Ms. Brown completed her investigation and determined that Plaintiff should be suspended for 3 days for violation of the company's respectful workplace policy. Plaintiff should not have been suspended for reporting Mr. Lierly's actions and such was done in retaliation for Plaintiff's report of the discriminatory conduct he was subjected to.

16. During his employment, Plaintiff was also subjected to discrimination due to his disability. Relevant, recent examples of the discrimination Plaintiff was subjected to includes the following:

 a. Plaintiff suffers from diabetic retinopathy and had surgery on both of his eyes to repair the retinopathy in 2013 to address the blindness I was suffering from at that time. Although the surgery did repair a lot of the damage, Plaintiff's vision remains 20/30 in one eye and 20/50 in the other. Plaintiff has difficulty in seeing motion, his peripheral vision is virtually non-existent, he has difficulty in seeing dark objects, Plaintiff is night-blind, and he remains nearsighted. Even with these issues, Plaintiff remained able to perform the functions of my position on the floor of the shop.

 b. Throughout the latter part of Plaintiff's employment as an Electro-Mechanic, Plaintiff was assigned to work the floor of the shop and his responsibilities included troubleshooting and repairing machines on the shop floor. Plaintiff was able to complete these tasks because the way the machines were laid out, he was able to get close enough to the machines to see the moving parts and diagnose issues for repair.

 c. In September or October of 2016, Plaintiff was moved from the Floor to the Box Shop by Mike Cassette, Crew Supervisor. At the time of the move, Plaintiff did inform Mr. Cassette that he believed he would have trouble diagnosing and repairing issues in the

      Box Shop because of his vision. Mr. Cassette informed Plaintiff that he wanted to make sure that Chris Jones received training on the Floor and that Plaintiff would be placed in the Box Shop for a while. Plaintiff then approached Kenny Kidd, Maintenance Supervisor, regarding my transfer to the Box Shop and advised him that his vision would limit his ability to work in the Box Shop. Mr. Kidd responded that he was not aware of my move to the Box Shop but that Mr. Cassette has the right to place Plaintiff where he wants.

d. Shortly thereafter, Plaintiff began working in the Box Shop. Fairly quickly, Plaintiff determined that his vision impairment was a problem in the Box Shop. For instance, the Tray Maker Machine on the production line in the Box Shop is protected by photovoltaic eyes, which prevented Plaintiff from getting close enough to the machine to diagnose issues without shutting down the line. Thus, Plaintiff would ask for assistance on those repairs and would be reprimanded for doing so.

e. Plaintiff was also pressured to sign off on training that he did not receive in the Box Shop. When Plaintiff was presented with training documents for his signature, to show that he had received training, Plaintiff would inform the Box Shop Supervisor, Cathy Handcock, that he had not received the training. Plaintiff was required to sign the training forms even though he had not received the level of training specified therein. Plaintiff did receive simple training, such as on how to move or reposition nozzles and cams. Plaintiff did not, however, receive more in-depth training such as on how to break down the machines or to evaluate the circuit boards inside the hot glue machine.

f. Plaintiff's placement in the Box Shop was relatively problem-free until January of 2017. In January of 2017 the first big problem with one of the hot glue machines arose

and the machine went out of service. Plaintiff spent approximately 15 minutes trying to diagnose and fix the problem but Mike Cassette sent Plaintiff to another line to start setting it up instead of allowing Plaintiff to stay and learn how to fix the issue that put the machine out of service. Plaintiff was written up for not knowing, as he was not trained, on the fact that the problem was a fuse inside the hot glue pot. However, it took the other crew over an hour to diagnose and fix the problem with the machine but they were not written up for poor performance for this.

g. Because of the issues Plaintiff was facing, he informed both Kenny Kidd, Maintenance Supervisor, and Johnny Long, Production Cold End Manager, that he did not believe that he could continue working in the Box Shop due to his vision. Plaintiff explained to them that he was not receiving assistance when he had trouble seeing to complete the repairs or when his blood sugar (diabetes) would drop and he would need to take a break to address that. Both Mr. Kidd and Mr. Long advised that they had not heard anything about production or the Box Shop being down and that Plaintiff would be fine but that they would speak to someone about the issues. Plaintiff's request to be moved back to the Floor was never directly addressed and he received a write up for the purported performance issue related to his failure to repair the hot glue pot.

h. In March 2017, Plaintiff was also written up for a glue pattern problem in the Box Shop. Line 2 in the shop was down and Plaintiff had torn the machine apart to diagnose and fix the problem. While that was occurring, Line 4 also went down. Plaintiff requested assistance in addressing both lines being down and Chris Jones, another Electro-Mechanic, was sent to assist in these repairs. After Mr. Jones and Plaintiff worked on Line 4 together for approximately 5 minutes, Mr. Cassette sent Plaintiff back to Line 2

7

      to continue that repair. Mr. Jones and Mr. Cassette worked on Line 4 for approximately 40 minutes, which prevented boxes from being available for packing and, thus, resulted in dumped bottles on that line. Plaintiff was written up for them having to dump the glass on Line 4 even though he was not the one working that repair.

      i. Plaintiff again met with both Mr. Kidd and Mr. Long about this issue and was told that they had not heard of any problems with production on those lines but would get back with Plaintiff.

17. Given the issues of race and disability discrimination Plaintiff was subjected to, he contacted the corporate 1-800 hotline number to report the race and disability discrimination he was experiencing. Plaintiff first contacted the hotline number in June of 2016 and spoke to Regional Human Resources Manager Jamie Navarro. Plaintiff maintained contact with Mr. Navarro regarding the issues he was experiencing from June of 2016 through January of 2017. Inexplicably, after January of 2017, Mr. Navarro stopped returning Plaintiff's telephone calls or responding to his voicemails. In Plaintiff's post-January of 2017 telephone calls to Mr. Navarro, he left multiple voicemails on Mr. Navarro's phone regarding the urgent need to speak to him regarding the way Plaintiff was being treated and the problems Plaintiff was having at work. Mr. Navarro never responded to any of the voicemails that Plaintiff left for him regarding these issues.

18. Plaintiff was terminated from employment on March 30, 2017. At the time of his termination, Plaintiff was told that the reasons for his termination included poor performance, related to my performance in the Box Shop, and for the "altercation" that Plaintiff had with Chris Lierly. Plaintiff was terminated in retaliation for reporting the race discrimination of Chris Lierly and for his continued complaints regarding Defendant's refusal to accommodate his disability.

19. Plaintiff was terminated for allegedly poor performance, as well as other issues identified in his termination letter.  Plaintiff was subjected to disparate treatment because of his race, age and disability in that white, non-disabled employees under the age of 40 are not terminated for engaging in the same performance issues that Plaintiff purportedly engaged in.  In point of fact, one instance in which a Caucasian, non-disabled employee under the age of 40 was treated better than me was where Shawn Nevels was provided a Last Chance Agreement in lieu of termination for poor job performance.  Mr. Nevels was permitted to move from Journeyman Electro-Mechanic to Process Handler 2 after he was repeatedly disciplined for poor performance.  Plaintiff was not not provided a similar opportunity even though I was employed with Ardagh for much longer than Mr. Nevels.  Additionally, Plaintiff has never seen an employee terminated for a policy and/or performance issue.  As a member of the Business Committee, Plaintiff's responsibilities included reviewing terminations of his fellow Union members.  In the two years that Plaintiff was in this role, he did not observe a single instance of termination related to policy and/or performance issues such as were identified in his termination.  Finally, the Collective Bargaining Agreement between Ardagh and the union establishes a 12-month rule.  Under this rule, a member of the Union can be terminated for cause if they accrue 4 write ups in a 12-month period.  Ardagh improperly counted one of the write ups, which occurred 13 months prior to my termination, in its reasons for termination, which violates its Collective Bargaining Agreement with the Union.
20. Plaintiff was discriminated against on the basis of his race, to wit, African American, in violation of Title VII of the Civil Rights Act of 1964.
21. Plaintiff was discriminated against on the basis of his disability in violation of the ADAAA.
22. Plaintiff was discriminated against on the basis of his age in violation of the ADEA.

23. Plaintiff was retaliated against for his complaints of disparate treatment, race discrimination and Defendant's failure to accommodate his disability, in violation of Title VII of the Civil Rights Act of 1964 and the ADAAA.

## FIRST CLAIM
**(Race Discrimination in Violation of Title VII)**

24. Plaintiff incorporates and re-alleges the foregoing paragraphs as though fully set forth herein and would further state as follows:

25. That, as a member of a protected class, to wit: African American, Plaintiff is protected by the provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*;

26. That the disparate treatment of Plaintiff by Defendant and its employees and/or agents was a direct result of discrimination on the basis of his race, to wit: African American, as prohibited by Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*;

27. That Plaintiff was unfairly treated and that the motivating reason for this treatment is based on his race, to wit: African American, as prohibited by Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*;

28. That Defendant ratified the acts of its agents and employees by failing to take remedial action upon notice by Plaintiff of the circumstances or by allowing the acts to occur after receiving actual or constructive notice of those acts;

29. That the conduct complained of constitutes illegal race discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*

30. Defendant's actions were willful and recklessly indifferent to Plaintiff's rights, thus warranting punitive damages.

31. As a direct and proximate result of Defendant's actions, Plaintiff has, is now, and will continue to suffer lost wages, fringe benefits, emotional pain, anxiety, inconvenience, mental anguish, loss of enjoyment of life, humiliation, and other pecuniary losses.

32. Plaintiff has been injured by the discrimination complained of herein and is entitled to compensatory and punitive damages and any other damages available pursuant to Title VII of the Civil Rights Act.

**WHEREFORE**, Plaintiff prays that the Defendant appear and answer this Complaint, and that this Court: (1) declare the conduct engaged in by the Defendant to be in violation of Plaintiff's rights; (2) enjoin the Defendant from engaging in such conduct; (3) enter a judgment for Plaintiff in an amount in excess of $100,000.00 plus interest, costs, attorney fees, and compensatory and punitive damages as provided for by applicable law; (4) order Plaintiff be reinstated to his former position, or receive front pay in lieu thereof; and (5) grant Plaintiff such other and further relief as this Court may deem just, proper and equitable.

## SECOND CLAIM
**(Retaliation in Violation of Title VII)**

33. Plaintiff incorporates and re-alleges the foregoing paragraphs as though fully set forth herein and would further state as follows:

34. Plaintiff followed the proper procedures as an employee of Defendant in exercising his federally protected right to complain of the disparate treatment he was subjected to as an employee in Defendant's employ

35. Plaintiff reported the discrimination he was subjected to as an employee of Defendant to the appropriate management and Human Resources personnel designated to receive such complaints.

36. As a direct result of Plaintiff's complaints, Defendant altered the terms, conditions and/or privileges of his employment by, among other retaliatory acts, terminating his employment.

37. As a direct result of Plaintiff's complaint, Defendant retaliated against Plaintiff for exercising his federally protected right to report the disparate treatment he was subjected to in the workplace.

38. Defendant's actions were willful and recklessly indifferent to Plaintiff's rights, thus warranting punitive damages.

39. As a direct and proximate result of Defendant's actions, Plaintiff has, is now, and will continue to suffer lost wages, fringe benefits, emotional pain, anxiety, inconvenience, mental anguish, loss of enjoyment of life, humiliation, and other pecuniary losses.

40. Plaintiff has been injured by the retaliation complained of herein and is entitled to compensatory and punitive damages and any other damages available pursuant to Title VII of the Civil Rights Act.

   **WHEREFORE**, Plaintiff prays that the Defendant appear and answer this Complaint, and that this Court: (1) declare the conduct engaged in by the Defendant to be in violation of Plaintiff's rights; (2) enjoin the Defendant from engaging in such conduct; (3) enter a judgment for Plaintiff in an amount in excess of $100,000.00 plus interest, costs, attorney fees, and compensatory and punitive damages as provided for by applicable law; (4) order Plaintiff be reinstated to his former position, or receive front pay in lieu thereof; and (5) grant Plaintiff such other and further relief as this Court may deem just, proper and equitable.

### THIRD CLAIM
### (Discrimination in Violation of the ADAAA)

41. Plaintiff incorporates and re-alleges the foregoing paragraphs as though fully set forth herein and would further state as follows:

42. As a result of his diabetes, Plaintiff is disabled pursuant to the ADAAA.

43. In the alternative, Defendant perceived Plaintiff as disabled or the Plaintiff had record of such impairment.

44. Plaintiff is qualified to perform, with reasonable accommodations, the essential functions of his position with Defendant.

45. Defendant violated the ADAAA by failing to make reasonable accommodations for Plaintiff's known physical limitations.

46. Defendant violated the ADAAA by permitting its agents and/or employees to create a hostile work environment regarding Plaintiff's disability.

47. Defendant further violated the ADAAA by terminating Plaintiff's employment because of his disability.

48. By and through, but not limited to, the events described herein, Plaintiff's terms and conditions of employment were adversely affected by Defendant's refusal to make reasonable accommodations for Plaintiff's known physical limitations, the hostile work environment Defendant's agents and/or employees created regarding Plaintiff's disability, and/or the termination of Plaintiff's employment because of his disability.

49. By and through, but not limited to, the actions described herein, Defendant has violated the ADAAA, 42 U.S.C.§§ 12101, et seq.

50. Defendant's actions were willful and recklessly indifferent to Plaintiff's rights, thus warranting punitive damages.

51. As a direct and proximate result of Defendant's actions, Plaintiff has, is now, and will continue to suffer lost wages, fringe benefits, emotional pain, anxiety, inconvenience, mental anguish, loss of enjoyment of life, humiliation, and other pecuniary losses.

52. Plaintiff has been injured by the discrimination complained of herein and is entitled to compensatory and punitive damages and any other damages available pursuant to the ADA.

**WHEREFORE**, Plaintiff prays that the Defendant appear and answer this Complaint, and that this Court: (1) declare the conduct engaged in by the Defendant to be in violation of Plaintiff's rights; (2) enjoin the Defendant from engaging in such conduct; (3) enter a judgment for Plaintiff in an amount in excess of $100,000.00 plus interest, costs, attorney fees, and compensatory and punitive damages as provided for by applicable law; (4) order Plaintiff be reinstated to his former position, or receive front pay in lieu thereof; and (5) grant Plaintiff such other and further relief as this Court may deem just, proper and equitable.

## FOURTH CLAIM
### (Retaliation in Violation of the ADAAA)

53. Plaintiff incorporates and re-alleges the foregoing paragraphs as though fully set forth herein and would further state as follows:

54. Plaintiff engaged in protected activity by reporting the discrimination he was subjected to regarding his disability to Defendant.

55. Plaintiff had a reasonable, good-faith belief that he was subjected to discrimination on the basis of his disability and acted in a reasonable manner in opposing said discrimination.

56. Plaintiff was subjected to materially adverse actions by Defendant, including the failure to accommodate Plaintiff's physical limitations and termination of his employment, in retaliation for opposing the disability discrimination he was subjected to.

57. Plaintiff's employment was terminated because of his protected opposition to disability discrimination.

58. By and through, but not limited to, the actions described herein, Defendant has violated the ADAAA, 42 U.S.C.§§ 12101, et seq.

59. Defendant's actions were willful and recklessly indifferent to Plaintiff's rights, thus warranting punitive damages.

60. As a direct and proximate result of Defendant's actions, Plaintiff has, is now, and will continue to suffer lost wages, fringe benefits, emotional pain, anxiety, inconvenience, mental anguish, loss of enjoyment of life, humiliation, and other pecuniary losses.

61. Plaintiff has been injured by the discrimination complained of herein and is entitled to compensatory and punitive damages and any other damages available pursuant to the ADA.

**WHEREFORE**, Plaintiff prays that the Defendant appear and answer this Complaint, and that this Court: (1) declare the conduct engaged in by the Defendant to be in violation of Plaintiff's rights; (2) enjoin the Defendant from engaging in such conduct; (3) enter a judgment for Plaintiff in an amount in excess of $100,000.00 plus interest, costs, attorney fees, and compensatory and punitive damages as provided for by applicable law; (4) order Plaintiff be reinstated to his former position, or receive front pay in lieu thereof; and (5) grant Plaintiff such other and further relief as this Court may deem just, proper and equitable.

### FIFTH CLAIM
### (Age Discrimination in Violation of the ADEA)

62. Plaintiff incorporates and re-alleges the foregoing paragraphs as though fully set forth herein and would further state as follows:

63. Plaintiff was subjected to disparate treatment due to his age during his employment with Defendant when he was terminated for the same behavior for which younger employees were not terminated.

64. That, as a member of a protected class, to wit: an individual over the age of forty, Plaintiff is protected by the provisions of the ADEA, 29 U.S.C. §§ 621, *et seq.*;

65. That the disparate treatment of Plaintiff by Defendant and its employees and/or agents was a direct result of discrimination on the basis of his Age, as prohibited by the ADEA, 29 U.S.C. §§ 621, *et seq.*;

66. That Plaintiff was unfairly treated and that the motivating reason for this treatment is based on his Age, as prohibited by the ADEA, 29 U.S.C. §§ 621, *et seq.*;

67. That Defendant ratified the acts of its agents and employees by failing to take remedial action upon notice by Plaintiff of the circumstances or by allowing the acts to occur after receiving actual or constructive notice of those acts;

68. That the conduct complained of constitutes illegal age discrimination in violation of the the ADEA, 29 U.S.C. §§ 621, *et seq.*

69. Defendant's actions were willful and recklessly indifferent to Plaintiff's rights, thus warranting punitive damages.

70. As a direct and proximate result of Defendant's actions, Plaintiff has, is now, and will continue to suffer lost wages, fringe benefits, emotional pain, anxiety, inconvenience, mental anguish, loss of enjoyment of life, humiliation, and other pecuniary losses.

71. Plaintiff has been injured by the discrimination complained of herein and is entitled to compensatory and punitive damages and any other damages available pursuant to Title VII of the Civil Rights Act.

**WHEREFORE**, Plaintiff prays that the Defendant appear and answer this Complaint, and that this Court: (1) declare the conduct engaged in by the Defendant to be in violation of Plaintiff's rights; (2) enjoin the Defendant from engaging in such conduct; (3) enter a judgment for Plaintiff

in an amount in excess of $100,000.00 plus interest, costs, attorney fees, and compensatory and punitive damages as provided for by applicable law; (4) order Plaintiff be reinstated to his former position, or receive front pay in lieu thereof; and (5) grant Plaintiff such other and further relief as this Court may deem just, proper and equitable.

Respectfully submitted,

**ARMSTRONG & VAUGHT, P.L.C.**

By: *s/ Charles C. Vaught*
**Charles C. Vaught, OBA #19962**
2727 East 21st Street, Suite 505
Tulsa, OK 74114
(918) 582-2500 – *telephone*
(918) 583-1755 – *facsimile*
***Attorney for Plaintiff***

EEOC Form 161 (11/16)

# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## DISMISSAL AND NOTICE OF RIGHTS

**To:** Benjamin M. Bailey
6608 S. 78th East Ave.
Tulsa, OK 74133

**From:** Oklahoma City Area Office
215 Dean A. McGee Avenue
Suite 524
Oklahoma City, OK 73102

[ ] *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 846-2016-13166 | Rafael Tirado, Investigator | (405) 231-5857 |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

[ ] The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ] Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

[ ] The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[ ] Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

[X] The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

[ ] The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[ ] Other *(briefly state)*

## - NOTICE OF SUIT RIGHTS -

*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit** may not be collectible.

On behalf of the Commission

_RPD_  for:  Holly Waldron Cole, Area Office Director     12-20-17 (Date Mailed)

Enclosures(s)

cc:
Carolyn Clay Hall
Associate General Counsel
Ardagh Group
PO Box 50487
Indianapolis, IN 46250

Received 12-26-17

EXHIBIT A.

EEOC Form 161 (11/16)       U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## DISMISSAL AND NOTICE OF RIGHTS

To: Benjamin M. Bailey  
6608 S. 78th East Ave.  
Tulsa, OK 74133

From: Oklahoma City Area Office  
215 Dean A. McGee Avenue  
Suite 524  
Oklahoma City, OK 73102

[ ] On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))

EEOC Charge No.: 564-2018-00691  
EEOC Representative: Rafael Tirado, Investigator  
Telephone No.: (405) 231-5857

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

[ ] The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ] Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

[ ] The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[ ] Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

[X] The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

[ ] The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[ ] Other (briefly state)

- NOTICE OF SUIT RIGHTS -  
(See the additional information attached to this form.)

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

_[signature]_ for: Holly Waldron Cole, Area Office Director

1-17-18 (Date Mailed)

Enclosures(s)

cc: Katie Brown  
HR Director  
1000 N. Mission Street  
Sapulpa, OK 74066

RECEIVED 01/17/2018

EXHIBIT B.